UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| HBM INTERESTS, LLC, ET AL. | CIVIL ACTION NO. 12-1048 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CHESAPEAKE LOUISIANA, LP, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before this Court is a Motion for Reconsideration (Record Document 40) filed on behalf of the Defendants, Chesapeake Louisiana, L.P. ("Chesapeake") and PXP Louisiana L.L.C. ("PXP"). Defendants move for reconsideration of the Court's previous Memorandum Ruling and Order (Record Documents 38 and 39) issued on March 28, 2013. Defendants seek a ruling from this Court granting their previous Motion for Partial Summary Judgment based on the lack of evidence of an actual reciprocal operating agreement or written contract evidencing such between Exco and Chesapeake. In opposition, Plaintiffs argue that the Court did not exclusively rely on the existence of a formalized reciprocal operating agreement when denying the motion. See Record Document 50. For the reasons stated herein, Defendants' Motion for Reconsideration (Record Document 40) is **DENIED**. Additionally, the Court, after full consideration of the briefing, uses this opportunity to clarify any confusion surrounding the previous Memorandum Ruling.

**I.     LAW AND ANALYSIS**

   **A.     Legal Standard.**

The Federal Rules of Civil Procedure do not recognize a motion for reconsideration, *per se*, however, such motions are typically treated as motions to alter or amend under

Rule 54(b). See S. Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc., Nos. 06–9170, 09–3394, 10–0791, 11–1499, 2013 WL 392582, *10 (E.D. La. Jan. 31, 2013); Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F.Supp.2d 471, 474-75 (M.D. La. 2002). Under Rule 54(b), the Court is given broad discretion to "reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." Melancon v. Texaco, Inc., 659 F.2d 551, 553 (5th Cir. 1981). "The exact standard applicable to the granting of a motion under Rule 54(b) is not clear, though it is typically held to be less exacting than would be a motion under Rule 59(e).... Though less exacting, courts have looked to the kinds of consideration under those rules for guidance." Livingston Downs, 259 F.Supp.2d at 475 (internal citations omitted). Generally, a motion to alter or amend a judgment, filed under Rule 59(e) may be granted: "(1) to correct manifest errors of law or fact upon which judgment is based; (2) the availability of new evidence; (3) the need to prevent manifest injustice; or (4) an intervening change in controlling law." In the Matter of Self, 172 F. Supp. 2d 813, 815-16 (W.D. La. 2001) (citing 11 Wright, Miller, & Kane, Federal Practice and Procedure § 2810.1).

"Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004). In fact, the Fifth Circuit has noted that the standards for Rule 59(e) "favor the denial" of such motions. S. Constructors Group, Inc. v. Dynalectric Co., 2 F.3d 606, 611 (5th Cir. 1993). Motions for reconsideration are "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment. . . . Rather, Rule 59(e) serve[s] the narrow purpose of allowing a party to correct manifest

errors of law or fact or to present newly discovered evidence." Templet, 367 F.3d at 479 (internal citations and marks omitted).

**B.     Analysis.**

In the case at hand, Defendants strongly protest the Court's denial of their Motion for Partial Summary Judgment arguing that no evidence has been produced supporting the existence of "reciprocal operating agreement" and that the Court erred in relying on the existence of such contract as justification for its holding.  Defendants are correct in their assertion that no actual contract demonstrating the exact terms of a reciprocal operating agreement has been presented to the Court; nevertheless, there is evidence of some "agreement" between Chesapeake and Exco and there remains a material dispute as to the nature of that relationship and whether the deductions of certain cost from Plaintiffs' royalty payments were appropriate under the lease.

Plaintiffs have provided evidence establishing the existence of at least some form of business agreement that may bear upon the issue at hand.  While perhaps the Court was unclear in the Memorandum Ruling referencing a "reciprocal operating agreement," the Court was not limiting its analysis and its holding to exclusively rely upon a formalized technical document entitled "Reciprocal Operating Agreement" governing all wells which were owned by either Chesapeake or Exco and operated by the other.  Rather, the Court was referring to the practice, to which there appears to be at least some sort of tacit agreement, where Chesapeake and Exco operate wells owned by the other and charge a special 3% marketing fee not normally charged to other non-working interest owners. Exco employee Jeff Edgren ("Edgren") testified that Exco charged a marketing fee to Chesapeake and not others because Chesapeake is the only one that charges the

marketing fee on their wells.  <u>See</u> Record Document 31-4, pg. 61 at lines 4-9.  Edgren specifically testified that Chesapeake is "charging Exco and I believe there were some discussions between Exco personnel and Chesapeake personnel and Chesapeake - - this was the arrangement they worked out."  <u>Id.</u> at pg 61 at lines 9-12.  Accordingly, when viewing the evidence in a light most favorable to the non-moving party, the Court has no choice but to deny Defendants' motion, as there remains a material dispute as to whether the costs deducted from Plaintiffs' royalties were associated with costs paid in arms-length transactions with unrelated and unaffiliated third parties for delivering the product to market.

      Defendants also urge this Court to dismiss the claims against PXP irrespective of any ruling pertaining to Chesapeake.  The Court declines to make such a ruling today.  While PXP does not charge through to Plaintiffs' royalty a 3% marketing fee stemming from any "arrangement" with Exco, there remains a material dispute as to whether all costs deducted by PXP, by virtue of its "agency" relationship with Chesapeake, were "actual charges paid by Lessee and made in arms-length transactions for delivering the product to market."  Additionally, as referenced previously, it is premature at this point for the Court to rule on any claim stemming from the accounting charges deducted by PXP.  The court has not received briefs clarifying the facts surrounding any accounting charges deducted from Plaintiffs' royalties or addressing whether such charges are legally and contractually permissible when interpreting the market value at the well calculation in conjunction with the specific restrictions placed by the lease.

      Finally, the Court uses this opportunity to clarify for the record its ruling with respect to Paragraph 2(b) of Exhibit A.  Paragraph 2(b) establishes the "market value at the wellhead" benchmark and clarifies that the price received by the lessee in an arms-length

transaction with a third party is "conclusively presumed to be the best price available in the field." Record Document 18-1, Lease Exhibit A, Paragraph 2(b). Plaintiffs argue that because this provision establishes the market value at the wellhead to be the "price received by the lessee," Plaintiffs are entitled to royalties based on the final sale price received, without regards to the product's actual value at the point of production or any cost associated with bringing the product to a suitable off-site market. While sounding elementary, the Court emphasizes that the "price" received by Exco for the off-site sale of gas is not necessarily the "price" received by Defendants for the instantaneous sale of gas at the point of production.

Furthermore, selling gas at the point of production is not the only method of calculating the "market value at the wellhead." Under Louisiana jurisprudence, the market value at the well can be calculated using the reconstruction approach in which certain costs necessary to get the gas from the point of production to the point of sale are subtracted from the price actually received. See Merritt v. Sw. Elec. Power Co., 499 So. 2d 210, 213 (La. App. 2 Cir. 1986). Accordingly, under this scenario where the gas has to be transported to a suitable market to be sold, Paragraph 2(c) kicks in and restricts the deduction of these costs unless various prerequisites are met.[1] Here, Defendants did not sell the gas instantaneously at the wellhead, but rather transported it to a suitable market. As such, the deduction of costs to get the product to market is permissible so long as it is in compliance with the remaining provisions of the lease, specifically Paragraph 2(c) of the

---

[1] Paragraph (c) of the Addendum appears to have been incorporated into the document for this very reason.

addendum. However, at this time, their remains a genuine dispute whether Defendants complied with all restrictions in Paragraph 2(c).

## CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion for Reconsideration (Record Document 40) be and is hereby **DENIED.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 26th day of July, 2013.

*[signature]*

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE